Halsted, Chancellor.
I see no way in which I could decree that the rents be paid to William Potts, trustee, &c., but by declaring the receivers sale void; or that it was made subject to encumbrance, and that the purchasers at the receivers sale took it subject to all encumbrances, and subject, too, to the pledge, if it be such, of the rents receivable from Fish & Green, to pay the interest of the debts named in what is called the assignment to Potts, trustee, &c., of the lease made to Fish & Green.
But the receivers sale was made free and clear of all encumbrances, and was confirmed by the court. It cannot now be disturbed by any action of this court. An appeal should have been taken from that decree of confirmation, as the *614 only mode of correcting it, if it was wrong. I cannot now declare that, the sale was made subject to encumbrances.
From- some facts stated in argument, it would seem that, when the act for the sale free from encumbrances was applied for, it was understood by the parties applying for it that Potts, trustee, &c., should not be affected in his right to receive the rents from Fish & Green, for the purposes stated in what is called the assignment to him of the lease to Fish & Green'| and -1 can very well imagine that the language used in the proviso of that act was understood by the parties applying for the act, or by those interested in the rents derivable from that lease, to be sufficient to protect Potts, trustee, &c., in the receipt of those rents. But I do not see that the court is at liberty to inquire what any person soliciting the passage of an act, or assenting to its passage, understood to be the meaning of its language. And, again, such understanding would not affect the purchasers at the receivers’ sale, or prior or subsequent mortgages of the property.
My conclusion on the re-hearing is the same as on the first hearing — that the Water Power Company are entitled to the rents.
Order accordingly.
The opinion of the court was delivered by
Green, C. J. Two questions are presented for the consideration of the court, viz.: First, whether the act of the fifteenth of February, eighteen hundred and .forty-four, entitled “An act to relieve the creditors of the Trenton Delaware Falls Company,” is a constitutional and valid act, and if it be, then, second, whether the right of the appellant to receive the rents assigned to him by the company, is secured by the provision of the third section of the act.
1. The act is alleged to be unconstitutional, upon the ground that it impairs the obligation of contracts. The company, at the time of the passage of the act, was insolvent. Its assets were in the hands of receivers. As the law stood *615 prior to that time, the receivers were authorized to sell the property of the corporation, subject to encumbrances. But the property being encumbered far beyond its value, no sale could be effected through the agency of the receivers. From the character of the work, and the nature of the encumbrances upon it, a sale by the ordinary process of law, upon proceedings instituted against separate portions of the work, at the instance of separate encumbrancers, if at all • practicable, would inevitably have involved loss to all parties concerned. The design and operation of the act was to effect an immediate sale of the entire work in the most advantageous manner. It effected promptly, through the agency of the receivers, what must otherwise have been accomplished at the cost of much delay and expíense, through the ordinary process of law. It left the proceeds of the sale in the hands of the Court of Chancery, to be disposed of according to the rights of the respective parties, as it would have been, had the property been sold under foreclosure. The act was designed to be in aid of the creditors of the company. Its design is not to invalidate any contracts, but to enforce them — not to impair any securities, but to aid in obtaining the benefit of them. It in no wise interferes with the obligation of any contract. It affects only the remedy.
But it is said that the interest assigned to the appellant was a franchise, which could not be sold or taken by virtue of the previous mortgage, by the ordinary process of law, and that, therefore, the act which authorized a sale of the property clear of the appellant’s interest, impaired the obligation of his contract. The first answer to the objection would seem to be, that if the encumbrance of the assignee of the rent was of a higher nature than the mortgage upon the work, or existed independent of that mortgage, the ground of complaint is not against the act, but against the order in which the assets were marshaled. The appellant was not, by the decree of the Chancellor, assigned the priority in the distribution of the fund, to which by law and by the provisions of this very act he was entitled. The relief should have been sought against that decree.
*616 But the answer may be placed upon broader ground. The rent of the water is not a franchise, nor is the right to receive or demand it a franchise. The company being authorized to draw the water from the river, and owning the raceway and the land upon which it was constructed, had the right to the use of the water flowing over their land through their raceway, as incident to the ownership of the land — as in fact a part of the land itself.
And a conveyance or mortgage of the land would pass the right to use the water, precisely as the conveyance of all other land passes the right to the use of the water flowing over it. That the right to draw the water from the river was derived from the state will not alter its character, nor will it convert the rent derived from it, or the right to receive the rent into a franchise, any more than the right to receive rent from land purchased' from the state, is a franchise.
The charter of the Society for Establishing Useful Manufactures, (Paterson 104,) contains no power to sell or lease water privileges. They have simply a power to acquire, hold and dispose of real estate. They lease and sell water power by virtue of the ownership of the land and their right to exercise this power has been repeatedly recognized, both by the Court of Chancery and by the Supreme Court.
The entire property of the Water Power Company, its lands, its raceway and its water power was subject to encumbrances by mortgage and judgment prior not only to the assignment to the appellant, but prior to the lease itself under which he claims. Clearly, whatever the nature of the interest of the assignee of the rent may have been, legal or equitable, it was subject to prior encumbrances,, by virtue of which, not only the assignment, but the lease itself, might have been extinguished. It would seem to be totally immaterial whether the previous encumbrance be satisfied by a sale, or a sequestration of the property of the company. But if it be material, it follows from what has been already said, that the right to receive the rents would have passed with the title to the work itself. So that the prior mort *617 gages and judgments were not only liens upon the work, and entitled the holders in equity to the rents and profits, but the mortgagees and judgment creditors had the right and the power, by the ordinary process of law, to extinguish the lease and the rights of the assignee consequent upon it.
It is said again, that the act is illegal, because it confounds the rights of encumbrancers upon the property, by uniting the entire work in one sale, and not disposing of it in distinct portions. This objection touches the policy of the act. But the difficulty of discriminating between the extent of the different encumbrances and the precise value of each in the distribution of the assets, where the validity of no contract is impaired, cannot affect the constitutionality or validity of the law. Nor is it perceived that the objection, whatever force it might have had, if urged by the mortgagees or judgment creditors, lies in the mouth of the appellant in this ease, whose interest was in no wise affected by it.
Again, it is said that the act is unconstitutional, because it reserved and protected existing leases from the operation of the sale. But the act confers no new right upon the lessee. It confers no additional validity on the lease. It simply declares that nothing in the act shall be construed to invalidate existing leases. It leaves the right of the lessees precisely as they stood before the passage of the act.
But it is said that the act itself was designed to protect, and does, in terms, protect the claim of the appellant.
The act provides that nothing therein contained shall be construed to invalidate any existing leases made by said company, or assignments thereof. It is contended that the effect of that provision is, that rents assigned remain an encumbrance upon the work, notwithstanding the sale, and that it was the design of the legislature to protect them. A lease is the conveyance of land rendering rent. The term is frequently used to designate the interest of the tenant; and when the statute speaks of the mortgage of a lease, (Rev. Stat. 89, § 9,) of the assignment of a lease, (Rev. Stat. 503, § 10,) or of the surrender of a lease, it always refers to the interest of the lessee in the contract, not the rent derivable from the *618 lease. The assignment of a lease is properly the transfer of the interest of the tenant. This is its popular as well as its appropriate and legal meaning. But it is said that the legislature, in the act now under consideration, used the phrase in a different and broader sense, designing to include an assignment by the landlord of the rent, as well as an assignment by the tenant of his interest in the premises. If it be clear thaj; the legislature used it in such sense, it must be construed accordingly.
The legal import of the language applies to the interest of the tenant, not to that of the landlord. To warrant a different construction, the intention of the legislature should be clear and unequivocal. There is no evidence of such intention in the language of the act. It must be found, if anywhere, in the reason and spirit of the enactment. But it is difficult to perceive why the legislature should have designed to protect the claims of the landlords, while the motives for protecting the interest of the tenants are sufficiently obvious. The tenants, upon the faith of their leases or contracts with the company, had made costly erections and improvements ; some of them held by virtue of contracts prior to any encumbrance upon the work. Their priority could not be disturbed. All of them had strong claims in equity. The improvements which they had made, and the rents they were paying, constituted, in great measure, the value of the work. If the leases were made for a fair consideration, rendering a just rent, the tenants had the strongest claim in justice and equity, that the value of their improvements should not be lost, even as against prior encumbrances; but that their title should be preserved, and the rents be appropriated in satisfaction of prior claims. Protection to the original tenants, or to their assignees, who made such improvements, was equitable and just. But upon what ground should or could the legislature have protected the right of the landlords or their assignees to receive the rents? If the act protects the assignee of the landlord, it protects the landlord. If it protects the assignee of the rent, it protects the rent also. The language of the act is, that nothing in the act shall be con *619 strued to invalidate leases made by said company, or assignments thereof. If the assignment of leases means the assignment of the landlord’s interest, the lease must mean the landlord’s interest. But surely the legislature never intended to protect the rents in the hands of the landlord. That would have been most effectually to impair the validity of contracts, and to take from the encumbrancers all the value of their security. It would have sold the work, but secured its entire value and income, not to the purchaser, but to the company and to their assignees. The law will admit of no such construction. Upon such interpretation, its provisions would neither be rational nor constitutional. It would violate alike the plain dictates of justice and the letter of the constitution.
The reason and spirit of the law, no less than its language, require that the assignments of leases should be construed to refer to the transfer of the rights of the tenants, and not to a mere assignment of the rent. Upon this interpretation the act is clearly constitutional. It violates no principle of justice. If made with the assent of the prior encumbrances, it conflicts with no rule of law.
The title of the appellant to receive the rent by virtue of the assignment is not saved from the operation of the sale. The equities, if any, of the party have been, or might have been protected in the Court of Chancery upon the distribution of the assets. All equities appear to have been thus protected. The appellant and his cestuis que trust, like many other honest creditors, have lost their claim, not from any illegality or want of equity in the statute, but because their security was inadequate.
The decree must be affirmed, with costs.
Decree accordingly.
Decree of the Chancellor affirmed unanimously.
Cited in Rader v. Southeasterly Road Dist. of Town. of Union, 7 Vr. 278; Randolph v. Middleton, 11 C. E. Gr. 547; Martin v. The Somerville Co., 3 Wallace, Jr., 211.